IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-204-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| HECTOR MANUEL DIAZ, JR., ) | |
| ) | |
| Defendant. ) | |

On November 9, 2021, Hector Manuel Diaz ("Diaz" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 516]. That same day, the court appointed counsel for Diaz pursuant to standing order 19-SO-3 [D.E. 517]. On March 23, 2022, Diaz, through counsel, filed a memorandum and documents in support [D.E. 529, 530, 535]. On April 6, 2022, the government responded in opposition [D.E. 540] and attached an exhibit [D.E. 541]. On April 12, 2022, Diaz replied [D.E. 543]. As explained below, the court denies Diaz's motion.

I.

On April 8, 2019, pursuant to a plea agreement, Diaz pleaded guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and a quantity of marijuana. See [D.E. 337, 340]. On August 23, 2019, the court held Diaz's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 392]; [D.E. 436]. The court calculated Diaz's total offense level to be 31, his criminal history category to be II, and his advisory guideline range to be 121 to 151 months'

imprisonment. See PSR ¶¶ 94, 96. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Diaz to 121 months' imprisonment. See [D.E. 436, 440]. Diaz did not appeal.

On November 9, 2021, Diaz moved for compassionate release. See [D.E. 516]. The government opposes the motion. See [D.E. 540].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

2

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's

3

minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Diaz applied to his warden a month after he moved for compassionate release. See [D.E. 535-1] 1. The government does not invoke the section 3582(c)(1)(A) exhaustion requirement. See [D.E. 540] 4. The court assumes that Diaz met the exhaustion requirement and addresses Diaz's motion on the merits. See Muhammad, 16 F.4th at 130.

Diaz seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his medical condition (diabetes, obesity, and high blood pressure), his release plan, his rehabilitative efforts, his time served, and his desire to care for his father. See [D.E. 516]; [D.E. 535] 5–24; [D.E. 535-1]; [D.E. 535-4] 1; [D.E. 535-6] 1–2; [D.E. 543].

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Diaz is 42 years old and is obese and has diabetes and high blood pressure. See [D.E. 529] 7, 16–17; [D.E. 541] 31. His medical conditions are under control. See [D.E. 529, 530, 541].

Diaz argues that his medical conditions put him at heightened risk of serious infection or death from COVID-19. See [D.E. 516]; [D.E. 535] 5–20; [D.E. 543] 1–5. However, Diaz received two doses of the Pfizer COVID-19 vaccine. See [D.E. 529] 19. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022)

4

(unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Diaz from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Moreover, Diaz and a BOP individualized needs plan state that Diaz had and recovered from COVID-19. See [D.E. 516] 2; [D.E. 535-2] 1. Diaz's BOP medical records state that Diaz was asymptomatic and in quarantine

5

in July 2020 but do not otherwise indicate that Diaz had COVID-19. See [D.E. 541] 32. If Diaz had COVID-19, then his natural antibodies provide additional protection. See Ibarra, 2022 WL 229198, at *1; Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021) (discussing natural immunity as a result of recovering from COVID-19). Therefore, reducing Diaz's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "family circumstances" policy statement, it does not apply to a desire to care for parents. See U.S.S.G. § 1B1.13 cmt. n.1. Nonetheless, the court considers Diaz's desire to care for his father under the "other reasons" policy statement and assumes without deciding that it is an extraordinary and compelling reason.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Diaz's medical conditions, his release plan, his rehabilitative efforts, his time served, and his desire to care for his father are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Diaz's sentence. See Hargrove, 30 F.4th at 198–99; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

Diaz is 42 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and a quantity of marijuana. See PSR ¶¶ 1–2, 15–16, 20. From 2013 to 2018, Diaz was a large-scale, multi-drug trafficker. See id. ¶¶ 20–21, 27, 30, 37, 39–42, 47, 51, 53–54. Diaz's latest criminal conduct is nothing new. See id. ¶ 59. Before his

6

federal conviction, Diaz had felony convictions for trafficking in cocaine by possession (two counts), trafficking in cocaine by sale (two counts), and trafficking in cocaine by delivery (two counts). See id. Diaz also had felony convictions for financial identity fraud and obtaining property by false pretense. See id.

Diaz has made some positive efforts while federally incarcerated. Diaz has taken classes on reading, managing debt, and parenting, among other topics. See [D.E. 535-2] 1. However, Diaz has incurred infractions in 2021 for disruptive conduct and in 2019 for possessing a hazardous tool (i.e., a cell phone). See [D.E. 540-1]. This court considers possession of a cell phone in prison to be an extraordinarily serious offense. See United States v. Melton, 761 F. App'x 171, 173–77 (4th Cir. 2019) (per curiam) (unpublished).

The court must balance Diaz's serious and prolonged criminal conduct, his serious criminal history, his serious misconduct in custody, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Diaz's potential exposure to COVID-19, his medical conditions, his release plan, his rehabilitative efforts, his time served, his vaccinated status, and his desire to help his father. Diaz has a release plan that includes living with his parents in Tolleson, Arizona, and returning to employment at Kroger. See [D.E. 516] 8; [D.E. 535-6] 1. The court recognizes Diaz has a supportive family. See [D.E. 535-6]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Diaz's arguments, the government's persuasive response, the need to punish Diaz for his serious criminal behavior, to incapacitate Diaz, to promote respect for the law, to deter others, and to protect society, the court denies Diaz's motion for compassionate release. See, e.g.,

7

Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 516].

SO ORDERED. This 30 day of September, 2022.

JAMES C. DEVER III
United States District Judge